UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BOBETTE SZYLLER | CIVIL ACTION |
| VERSUS | No. 17-5153 |
| CAPITAL ONE, N.A. | SECTION: "J"(4) |

## ORDER AND REASONS

Before the Court are a *Motion for Summary Judgment* **(Rec. Doc. 32)** filed by Defendant, Capital One, N.A.; a *Motion for Summary Judgment* **(Rec. Doc. 33)** filed by Plaintiff, Bobette R. Szyller; and a *Motion to Strike Jury* **(Rec. Doc. 35)** filed by Capital One. Parties have briefed each of the Motions extensively. Having considered the Motion and legal memoranda, the record, and the applicable law, the Court finds that Defendant's Motion for Summary Judgment should be **GRANTED** and the remaining Motions should be **DENIED**.

## FACTS AND PROCEDURAL BACKGROUND

Plaintiff in this case is Bobette Szyller, widow to decedent Leon Szyller. She alleges that Defendant is liable for its failure to make payments to her from several accounts upon the death of her husband. Mr. and Mrs. Szyller were married for 30 years before Mr. Szyller died on April 27, 2017, at the age of 88. (Rec. Doc. 1-2 at 1). Before his death Mr. Szyller opened up several accounts with Capital One. Three accounts maintained at Capital One (collectively the "Accounts"), named as follows, are relevant here:

1

1. Bobette R Szyller OR Leon A Szyller OR Anna S Arshad, Account Number 6607 ("Account 6607").
2. Leon A Szyller OR Anna S Arshad POD Bobette Szyller, Account Number ending in 6812 ("Account 6812")
3. Leon A Szyller POD Bobette Szyller, Account Number ending in 9983 ("Account 9983")

(Rec. Doc. 32-2 at 2). Mr. Szyller established Account 6607 in 1999. According to a new account information card dated November 14, 2014 (Rec. Doc. 33-10), Anna Arshad—Mr. Szyller's daughter from a previous marriage—became a signatory and co-owner of the account on that date. The card, unsigned by Mrs. Szyller, designates her as "POD BOBETTE SZYLLER." The card further states:

> BY MY (OUR) SIGNATURE(S) BELOW . . . I (WE) ACKNOWLEDGE RECEIPT OF A COPY OF THE BANK'S "RULES GOVERNING DEPOSIT ACCOUNTS," . . . AND AGREE TO THE TERMS AND CONDITIONS OF THE ACCOUNT AS DESCRIBED IN SAID DISCLOSURES, INCLUDING ANY AND ALL AMENDMENTS THERETO.

(Rec. Doc. 33-10). The referenced Rules Governing Deposit Accounts[1] (the "Rules") (Rec. Doc. 35-4 at 66-75) clarify that "POD" means "Payable on Death." According to the Rules, an individual designated as a Payable On Death or POD beneficiary is entitled to the to the account balance upon death of the owner of the account. (Rec. Doc. 35-4 at 71). "[O]r if there are co-owners, upon the death of the last co-owner." (Rec. Doc. 35-4 at 71). The Rules make clear that the POD beneficiary has no interest in the account until each of the co-owners of the account have died. Up until death, an owner may freely withdraw from the account, add co-owners, close the account,

---

[1] Parties have attached several versions of the Rules as they have been amended through the years. Unlike some of Defendant's manuals governing internal policies and procedures, Parties do not suggest that the Rules were amended in a way that is material to this case. The Court cites to the version of the Rules effective as of April 16, 2016.

and add or remove POD designations. The Rules also clarify that applicable state law governs these types of accounts and that the account owner is "solely responsible for meeting the requirements for establishing [the] account as a POD, including any titling requirements." (Rec. Doc. 35-4 at 71).

When Mr. Szyler died Capital One refused to pass the proceeds left in Account 6607—$68,969.42—to Mrs. Szyller on the ground that there was a living account owner, Ms. Arshad, and because the bank had not received an affidavit required by state law. (Rec. Doc. 33-1 at 4). POD accounts are specifically authorized by Louisiana Revised Statute § 6:314. However, for an account to constitute a "trust deposit,"—Louisiana's nomenclature for a POD account—the law requires the "depositor [to] give to the depository bank an affidavit in authentic form or an act under private signature executed in the presence of an officer or a branch manager of the depository bank and two additional persons, stating the names of one or more beneficiaries." La. Stat. Ann. § 6:314. Capital One claims it never received this authentic form affidavit ("POD affidavit") from Mr. Szyller, and so it was unable to disburse the funds to Mrs. Szyller.

Mr. Szyller opened Account 6812 in 2012. A new account information card for Account 6812 dated November 14, 2014 (Rec. Doc. 33-8) also designates Mrs. Szyller as "POD BOBETTE SZYLLER" and Ms. Arshad as co-owner.[2] When Mr. Szyller died, the bank refused to deliver the proceeds left in the account—$195,426.22—to Mrs.

---

[2] This card is substantially identical to the November 14, 2014 card designating Ms. Arshad a co-owner for Account 6607. (Rec. Doc. 33-10).

3

Szyller, again on the grounds that an owner of the account was still alive and because the Defendant had not received the POD affidavit. (Rec. Doc. 33-1 at 3).

Mr. Szyller established Account 9983 around January of 2015. (Rec. Doc. 33-1 at 4). This account differs from the others in that the effective new account information card lists Mr. Szyller as the only owner and Mrs. Szyller as the POD beneficiary. (Rec. Doc. 33-11). Nevertheless, upon Mr. Szyller's death, Capital One also refused to grant Mrs. Szyller access to the funds in this account—$14,249.87—on the sole ground that the bank had not received a POD affidavit from Mr. Szyller.

After Mr. Szyller's death, both the executor of Mr. Szyller's estate and Mr. Szyller's adult children—the primary beneficiaries of Decedent's will—alleged that Mrs. Szyller was not entitled to the funds because they properly belonged to the estate. (Rec. Doc. 33-1 at 5). Mrs. Szyller settled with the estate and the legatees for $100,000 of the total $278,645.51 left by Mr. Szyller in the Accounts. Mrs. Szyller then filed the instant lawsuit in state court to recover $178,645.51 from Capital One.[3] (Rec. Doc. 33-1 at 5). With the settlement, this is the amount she would have received if Capital One had delivered the funds to her following Mr. Szyller's passing. (Rec. Doc. 33-1 at 5). Plaintiff claims Defendant was negligent in helping Mr. Szyller to form the POD Accounts, negligent in training its employees and that Capital One negligently misrepresented the Accounts as POD accounts to Plaintiff and Mr. Szyller, and that Capital One breached its contract with Mr. Szyller. (Rec. Doc. 1-2).

---

[3] The state court complaint refers to damages in the amount of $178,629.49. (Rec. Doc. 1-2 at 12). For purposes of this Order, the Court depends on the numbers Plaintiff uses in her memorandum supporting her Motion for Summary Judgment. (Rec. Doc. 33-1).

4

Defendant then removed the proceeding to federal court and filed its Motion for Summary Judgment. Plaintiff then filed her own Motion for Summary Judgment. Defendant then filed its Motion to Strike Jury Demand.

## **PARTIES' ARGUMENTS**

Defendant first argues that Plaintiff cannot assert claims against Defendant for adding Ms. Arshad as a co-owner to the accounts because Plaintiff had no interest in the accounts before Mr. Szyller's death. Second, Defendant relies on Louisiana Revised Statute 6:314 and the Rules adopted by reference by all signatories to the new account information cards. Together, Defendant argues, the Rules and state law firmly establish it was Mr. Szyller's responsibility to provide Capital One with a POD affidavit in authentic form to render the Accounts' POD designations effective. Therefore, according to Defendant, Plaintiff's claims relating to POD designated accounts must be dismissed. Third, Defendant argues it owed no duty to Mr. Szyller to instruct him as to the effect of his adding his daughter to the account or to what effect the POD designation had. Finally, Defendant argues it did not have a fiduciary relationship with Mr. Szyller. Thus, Plaintiff's negligent misrepresentations must therefore be dismissed.

Plaintiff counters that banks do owe a duty to third-party beneficiaries under Louisiana law. Plaintiff relies almost exclusively on a single case, *In re Succession of McKnight*, 768 So. 2d 794 (La. App. 2 Cir. 10/4/2000), in which a Louisiana appellate court recognized a bank had assumed a duty to its customer because the bank's signature card "purported to provide the rules applicable to a joint-tenant account,

5

with a right of survivorship." Plaintiff argues that the Rules, which are incorporated by the new account information cards by reference, describe the function of a POD account as one which pays the designated beneficiary upon death of the owner. Moreover, Plaintiff argues that Defendant breached its duty to the Szyllers in four different ways:

> (1) by misrepresentation about the proper establishment of the POD designations, (2) by failing to follow its own procedures and appropriate banking practice in the creation of the POD designations, (3) by failing to properly train its bankers on the creation and maintenance of the POD accounts, and (4) by failing to follow its own policy and reasonable banking practices when executing Mr. Szyller's instructions to add Anna Arshad as a name on the accounts."

Plaintiff's arguments for summary judgment in her favor rehash the arguments above, as do Defendant's arguments opposing summary judgment for Plaintiff.

Defendant also argues that Mr. Szyller waived his right to a jury by becoming an account owner. The new account information cards which Mr. Szyller signed incorporate the Rules, which state that any action brought against Capital One, which requires interpretation of the Rules will be decided before a judge without a jury. (Rec. Doc. 35-2 at 3). Plaintiff contests that the jury waiver provision was never agreed to by Mr. Szyller because the Rules were never provided to him and in any case, the jury waiver provision is adhesionary and should not be applied as written.

## **APPLICABLE LAW**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as

6

to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)), *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

When examining matters of state law, this Court will employ the principles of interpretation used by the state's highest court. *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 564 (5th Cir. 2010). Mindful of Louisiana's

7

distinction between primary and secondary sources of law, the Court will begin its analyses with reliance on the Louisiana Constitution and statutes before looking to "jurisprudence, doctrine, conventional usages, and equity, [which] may guide the court in reaching a decision in the absence of legislation and custom." *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 547 (5th Cir. 2004) (quoting La. Civ. Code. art. 1 rev. cmt. b). If the Court must make an "Erie guess" on an issue of Louisiana law, the Court will decide the issue the way that it believes the Supreme Court of Louisiana would decide it. *Id.* (citation omitted). This Court is not strictly bound by the decisions of the state intermediate courts and will disregard them if the Court is "convinced that the Louisiana Supreme Court would decide otherwise." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007).

### **DISCUSSION**

Plaintiff alleges one of two factual scenarios occurred in this case, either Capital One changed the titles of the Accounts to indicate Mrs. Szyller was a POD beneficiary without obtaining the POD affidavits, or Capital One received the POD affidavits, changed the account names and then lost the affidavits. (Rec. Doc. 33-1 at 13). Either way, Defendant breached its contract and was negligent, says Plaintiff. The gist of Plaintiff's argument is that "Capital One owed a duty to Bobette Szyller through its contractual relationship with her as a third-party beneficiary on the POD Accounts" and breached this duty by improperly setting up the Accounts and then negligently misrepresenting the Accounts as POD accounts to Mr. and Mrs. Szyller in bank statements.

8

## I. DEFENDANT'S ALLEGED NEGLIGENT MISREPRESENTATION THAT MR. SZYLLER HAD SUCCESSFULLY FORMED A POD ACCOUNT

The Parties hotly contest whether Capital One owed any duty to Mrs. Szyller. That determination is key, because "[t]he approach of [Louisiana] courts in . . . negligent misinformation cases has been to integrate the tort doctrine into the duty/risk analysis." To succeed on her claim, Plaintiff must prove that "the defendant owed a legal duty of care to the plaintiff, the requisite duty was breached by the defendant, and the risk of harm was within the scope of protection afforded by the duty breached." *California First Natl. Bank v. Boh Bros. Constr. Co.*, No. LLC, CV 16-2699, 2018 WL 321709, at *3 (E.D. La. Jan. 8, 2018) (quoting *Granger v. Christus Health Cent. La.*, 144 So. 3d 736, 766-67 (La. 6/28/13)). The duty element is a problem for Plaintiff, because "[u]nder Louisiana law, banks ordinarily owe no duty, fiduciary or otherwise, to third persons such as Mrs. [Szyller]." *Eubanks v. F.D.I.C.*, 977 F.2d 166, 170 (5th Cir. 1992). In fact, "[o]rdinarily, a bank and a depositor have a debtor-creditor relationship with no duty of care imposed on the bank." *In re Succession of McKnight*, 768 So. 2d 794, 797 (La. App. 2d Cir. 2000). Furthermore, Louisiana law explicitly limits the liability of banks by establishing that no financial institutions "shall be deemed or implied to be acting as a fiduciary . . . to its customers or to third parties . . . unless there is a written agency or trust agreement under which the financial institution specifically agrees to act and perform in the capacity of a fiduciary." La. Stat. Ann. § 6:1124. The legislative history of section 1124, confirms:

> [T]he bill concretely states that there is no fiduciary relationship between a bank and its customer just because the customer has an account at the bank or another relationship with the bank. An agreement would be required in order to establish a fiduciary relationship between a financial institution and a customer. This would not eliminate the obligation of good faith and fair dealing under the Civil Code

*Priola Const. Corp. v. Profast Dev. Group, Inc.*, 21 So. 3d 456, 460 (La. App. 3d Cir. 2009). Plaintiff does not suggest there is any such written agreement explicitly establishing a fiduciary relationship between Mr. Szyller and Defendant in this case, therefore, to the extent that Defendant owed a duty to Mr. or Mrs. Szyller, it was not a fiduciary duty. *Singleton v. Am. Sec. Bank of Ville Platte, Inc.*, 849 So. 2d 72, 78 (La. App. 3d Cir. 2003) (finding no fiduciary duty owed because "no such [written] agreement has been introduced into evidence").

So, what duty, if any, did Defendant owe? Plaintiff relies on the lone case of *In re Succession of McKnight*, for the proposition that "certain circumstances will give rise to a duty" owed by a bank to its customer. 768 So. 2d at 794, 797.[4] The Louisiana Second Circuit found facts in *McKnight* giving rise to a duty where "the bank's internal signature card for the account contain[ed] the phrase 'trustee for' and

---

[4] The scope of the duty that the *McKnight* court found the defendant bank owed to its customer is not entirely clear. A negligent misrepresentation claim brought pursuant to Louisiana law can be properly alleged against a defendant who owed a fiduciary duty *or* a duty in contract. *See Daye v. Gen. Motors Corp.*, 720 So. 2d 654, 659 (La. 1998). To the extent that court found the bank had implicitly assumed a fiduciary duty, the opinion is in contravention with statutory law requiring a written trust agreement and at odds with the jurisprudence of other Louisiana courts. *See Singleton,* 849 So. 2d at 78; *see also Priola*, 21 So. 3d at 462. The better interpretation of *McKnight* is that the court found that while the bank owed no duty speak on what state law required, it did owe a duty to speak reasonably when it described the law on its signature card, because of the bank's contractual relationship with its depositor. This interpretation of *McKnight* would not conflict with section 1124—which precludes only implicit *fiduciary* duties—and would be in line with other Louisiana courts' analyses. *See, e.g.*, *BizCapital Bus. & Indus. Dev. Corp. v. Union Planters Corp.*, 884 So. 2d 623, 627 (La. App. 4th Cir. 2004) ("[T]his Court finds that the legislature did not intend to totally immunize banks from all legal duties in their relationship with customers and third parties.").

10

name[d] a specific beneficiary." *Id.* The executed signature card in that case was titled as "[Decedent's Name] in trust for [Plaintiff's Name]" and the box for "Joint—With Survivorship" was marked. Critically, the signature card also purported to explain to the customer the rules applicable to a joint-tenant account with a right of survivorship:

> An account opened by two or more persons with a right of survivorship agreement. That in the event of the death of one tenant, the balance in the account passes directly to the surviving tenants, instead of the estate of the deceased.

*Id.* at 798. The court noted that, "Generally, a bank is not deemed to act as a fiduciary to its customers or to third parties. However, in some instances a party's assumption of a contractual duty may create a corollary tort duty in favor of a third person." *Id.* The court then found the bank, by including the language above on the signature card, had assumed a responsibility to instruct the decedent on how funds would be distributed after her death, and effectively "agreed to distribute such funds to the plaintiff." *Id.* Therefore, the court found the Bank owed a duty of reasonable care in advising decedent on how to distribute funds upon death to the plaintiff. *Id.* The bank failed in this duty, because the bank did not advise the decedent that the plaintiff was not within the required degree of kinship required to create a valid trust. The result was that the funds in the account were properly the property of the decedent's estate. *Id.* at 798.

In this case, Plaintiff does not rely on any language printed on any of the new account information cards themselves, other than the titles, but rather the language of the incorporated Rules, which state, "Upon the death of all owners, we will

11

distribute the then remaining funds to such of the beneficiaries as shall be then-living." (Rec. Doc. 33-1 at 10).[5] If the Rules stated merely this, then this case would resemble *McKnight*. However, the POD subsection of the Rules go on:

> **"Payable on Death" (POD)** - You may designate an individual or joint account to be payable upon your death to a designated beneficiary or beneficiaries. POD accounts . . . are governed by applicable state laws and regulations. *You are solely responsible for meeting the requirements for establishing your account as a POD, including any titling requirements.*
>
> During your life, the funds in the account belong to you and, until your death*, or if there are co-owners, upon the death of the last co-owner*, the beneficiary(ies) have no interest in the account and cannot perform transactions on the account. You may withdraw all or part of the account balance, close the account, remove or add POD beneficiaries or change the account type or ownership. Upon the death of all owners, we will distribute the then remaining funds to such of the beneficiaries as shall be then-living, in equal shares, subject to our right to charge the account for any amount a deceased owner, co-owner or POD beneficiary owes us.

(Rec. Doc. 35-4 at 71) (emphasis added). Thus, unlike the bank in *McKnight*, Defendant did not "purport[] to provide the rules applicable to a [POD] account." *Id.* at 798. The Rules instead warned Mr. Szyller that POD accounts were governed by state law, and communicated plainly that it was Mr. Szyller's responsibility to meet those state law requirements, whatever they might be. Louisiana law imposes the duty to provide an authentic form affidavit on the depositor, it places no such duty on

---

[5] Although Plaintiff argues that Mr. Szyller was misled by provisions in the Rules, Plaintiff also urges elsewhere that Mr. Szyller never received the Rules and therefore Mr. Szyller and Mrs. Szyller are not bound by them. This claim, to the extent that Plaintiff urges it seriously, is unsupported. First, the new information card, a very simply one page document, states in all caps that signatories acknowledge receipt of the Rules. Second, the account manager testified that it was his usual practice to briefly go through the Rules with customers when a new account was opened. (Rec. Doc. 44 at 9).

12

the bank. La. Stat. Ann. § 6:314 ("The depositor shall give to the depository bank an affidavit in authentic form . . . stating the names of one or more beneficiaries.").

Plaintiff argues that the language of the Rules referring the account owner to state law requirements is negated by further "repeated misrepresentations by Capital One regarding the status of the Accounts." (Rec. Doc. 33-1 at 12). The only misrepresentations that Plaintiff refers to are the names of the Accounts appearing on bank statements, which include "POD Bobette Szyller" or similar language. But merely using the label "POD" was not misleading, because the Rules make clear that the Accounts would not be effective POD accounts without Mr. Szyller's compliance with state law. If Mr. Szyller failed to perform his responsibility in meeting titling requirements, he did not do what was required of him by the governing Rules and—because of how the Louisiana legislature has chosen to define the relationship between banks and depositors—fault therefore lies with Mr. Szyller and not with the bank. *See Simmons, Morris & Carroll, LLC v. Capital One, N.A.*, 144 So. 3d 1207, 1217 (La. App. 2d Cir. 2014) (finding no duty on the part of bank to inform plaintiff whether check cleared, in part because plaintiff had not performed what was required of him by the adopted rules governing deposit accounts); *see also D & J Tire, Inc. v. Bank One, Louisiana, Nat. Ass'n,* 838 So. 2d 112, 115 (La. App. 3d Cir. 2003) (finding that trial court erred in finding that bank owed a duty to verify that a copy of deposit slip matched the original, absent a statute assigning the duty to the bank or evidence that the bank had assumed its customer's responsibility to monitor its own employees for fraudulent activity). In sum, Defendant had no affirmative duty to explain what

state law required of its customer in order to set up a special account that would divert funds away from his succession, La. Stat. Ann. § 6:1124, and Defendant did not assume such a duty merely by using the term "POD" on the account names.

Thus, because Plaintiff cannot prove an essential element of negligent misrepresentation at trial, the summary judgment on this claim is appropriate.

## II. DEFENDANT'S ALLEGED NEGLIGENT ACT OF ADDING MS. ARSHAD TO THE ACCOUNTS

Plaintiff has another problem. Defendant did not pay out on Account 6607 and Account 6812, not only because the Defendant lacked corresponding POD affidavits authorizing Plaintiff as beneficiary, but also because an account owner was still living. The new account information cards dated November 14, 2014 added Ms. Arshad as a "New Name/Owner" to the accounts. (Rec. Docs. 33-10, 33-8). The Rules—which Mr. Szyller and Ms. Arshad agreed to be bound by—explicitly state that funds will not be paid from a POD account until the last of the co-owners to these accounts die. The Rules clarify that beneficiaries do not even have an interest in an account until each of the co-owners to an account have died. Therefore, according to the terms entered into by Mr. Szyller, Ms. Arshad, and the Defendant, once Mr. Szyller died, control of the Accounts and the right to the funds passed exclusively to Ms. Arshad. (Rec. Doc. 35-4 at 71). Upon becoming the last remaining owner of the account Ms. Arshad was free to remove any POD beneficiaries from the Accounts, even if Mr. Szyller had provided an authentic form affidavit to the bank naming Mrs. Szyller as beneficiary. (Rec. Doc. 35-4 at 71).

Plaintiff asserts that it was Mr. Szyller's intent to add Ms. Arshad to the account merely so that she could assist her father in his financial affairs. (Rec. Doc. 39 at 16). However, there is no evidence in the record that if Mr. Szyller had this intent, it was ever communicated to Defendant. According to her deposition testimony, all Ms. Arshad could recall from the November 14, 2014 meeting between herself, the bank, and her father, is that her father told Defendant that he wanted to add Ms. Arshad to his accounts. (Rec. Doc. 39-2 at 6). Mr. Szyller did not inquire into what effect adding Ms. Arshad would have, and Defendant evidently did not explain. Plaintiff, asserts that Defendant's failure to inquire why Ms. Arshad was being added to the account and its failure to explain the consequences of doing so, violated Defendant's internal policies, which is proof that Defendant was negligent. Plaintiff cites to no case law in support of this argument. As the Court has already established, Defendant did not owe a fiduciary duty to Mr. Szyller or to Mrs. Szyller. Mr. Szyller asked to add his daughter to his accounts and Defendant complied with his request. The consequences of adding another account owner to a POD account were clearly explained in the Rules that Mr. Szyller and Ms. Arshad acknowledged they received and agreed to be bound by. Plaintiff cannot succeed at trial on its claim that it was negligent for Defendant to comply with Mr. Szyller's request to add Ms. Arshad to the two Accounts and so summary judgment as to this allegation is appropriate.

**III.    BREACH OF CONTRACT AND COROLLARY NEGLIGENCE CLAIMS**

As referenced above, Plaintiff styles her theory of the case in either-or fashion. Either Defendant opened the Accounts without receiving the POD affidavits or

15

Defendant received the POD affidavits and then lost them. The Court already concluded that Defendant did not commit negligent misrepresentation by including a POD label on the Accounts without receiving affidavits, because Plaintiff could not point to a duty that Defendant owed and breached. Plaintiff's breach of contract and corollary tort claims urging that Defendant improperly set up or maintained the Accounts also apparently depend on *McNight*'s reasoning for the creation of a duty, and so they are also subject to summary judgment.

The Court must still address Plaintiff's alternative theory of the case that Mr. Szyller did meet state law requirements. Plaintiff suggests that Mr. Szyller turned over the authentic form affidavits to Defendant, but Defendant lost them and thereby breached its contractual duties.

This inquiry is simplified somewhat because whether Defendant was given and lost POD affidavits for Account 6607 and Account 6812 is irrelevant. As the Court found above, Mrs. Szyller never acquired an interest in those accounts because there was a never a time when there was not a living account owner of them. Mrs. Szyller would have acquired an interest in Account 9983 however, if Defendant had been able to produce a POD affidavit for that account. Therefore, whether the Mr. Szyller actually gave the POD affidavit to Defendant gives rise to a potential issue of material fact.

The only evidence Plaintiff offers that Mr. Szyller gave Defendant a POD affidavit for Account 9983, is that it would have violated Defendant's internal policies to change an account name to include a POD designation without first obtaining a

POD affidavit. For evidence of Defendant's policies, Plaintiff relies in its opposition on a variation of Capital One's Branch Policies and Procedures handbook, which enumerates seven steps for account managers to follow in establishing POD accounts. The first step is to "[h]ave the customer complete and sign a Payable on Death Affidavit"; a hyperlink to the appropriate form is included. (Rec. Doc. 32-23 at 39). Farther down the page, step three instructs, "Add 'Payable on Death' or 'In Trust For' to the second or third line of the title." Thus, a plain reading of this version of the handbook is that account managers are to change a title of a POD account after a customer has provided the bank with a POD affidavit. However, this step-by-step instruction did not become a part of Capital One's Branch Policies and Procedures until 2016. When Mrs. Szyller opened Account 9983, the instruction on how to open a POD account did not provide a particular order for steps to be completed.[6] (Rec. Doc. 33-14 at 33-15). This is consistent with an affidavit submitted by Capital One's "Director of Retail Branch Knowledge Management," who avers that, "Prior to August 1, 2016, it did not violate Capital One's Policies and Procedures to open a bank account at Capital One with a Payable on Death designation in the account title . . . without receiving the Payable on Death affidavit from the customer." (Rec. Doc. 44-1 at 1-2).

---

[6] At the time Account 9983 was opened, Capital One's instructions for how to open a POD account were presented in a bullet point format. (Rec. Doc. 33-34 at 35). William War, the personal banker at Capital One who helped Mr. Szyller establish Account 9983, testified that these instructions provided the steps for creating a POD account, but "not [in] the order that you would actually do it." (Rec. Doc. 33-14 at 14). Thus, Plaintiff's own evidence shows that at the time Account 9983 was created, the Defendant did not have a policy requiring account managers to obtain an executed POD affidavit before using the POD designation in an account title.

Thus, Plaintiff's assertion that Defendant must have acted in contravention of its own policies is a conclusory statement without support in the record. However, even if this Court were to accept that Capital One would have had to violate its own internal policies in using the POD designation for Account 9983 without receiving an affidavit, it is still unlikely that this "evidence" would be substantial enough for Plaintiff to withstand summary judgment. That is because Defendant has presented unrebutted evidence that Capital One gave Mr. Szyller a POD affidavit form to sign and the executed form was never returned to the bank.

Defendant filed a form into the record titled "Payable on Death Account Affidavit (Required by LA. REV. STAT. ANN. 6:314)," "Account No. XXXXXX-9983." (Rec. Doc. 40-9 at 57). The form, apparently signed by Mr. Szyller, includes the signatures of two witnesses and a notary and is dated February 5th, 2015. The form names Mrs. Szyller as Mr. Szyller's beneficiary. Plaintiff does not suggest that this executed form was returned to Capital One before this litigation commenced and the record evidences that it was not. That is because Ms. Arshad testified in her deposition that one of the witnesses, Aaron Rucker—who also served as a groundskeeper for Mr. Szyller—gave her the original of this POD affidavit. (Rec. Doc. 40-8 at 58-60). Ms. Arshad decided to keep this executed POD affidavit and did not allow it to be returned to Capital One. (Rec. Doc. 40-8 at 87). She never told her father of her decision to hold onto the affidavit. (Rec. Doc. 40-8 at 87).

Thus, the uncontroverted evidence of the record is that Defendant opened Account 9983 on January 20, 2015, with Mrs. Szyller designated as POD beneficiary. On February 5th, 2015, Mr. Szyller executed a POD affidavit in favor of Mrs. Szyller, but that executed affidavit was never returned to Defendant. From this it is clear that regardless of what its policies required, Capital One used the POD designation without receiving a POD affidavit from Mr. Szyller. Given this evidence, no reasonable jury could find that Capital One received and then lost the POD affidavit. Summary Judgment is appropriate on the remaining breach of contract and corollary negligence claims as well.

To sum up, summary judgment is appropriate on all of Plaintiff's negligent misrepresentation, breach of contract and corollary tort claims. Plaintiff's allegations that Defendant acted tortuously and breached its contract by losing POD affidavits are without support in the record. Furthermore, Defendant did not owe a fiduciary duty to Plaintiff to guide plaintiff through the process of complying with state law. Nor did Defendant assume a duty merely by using titling the Accounts with a POD designation. The responsibility of complying state law belonged to Mr. Szyller both according to the governing Rules and statutory law. Finally, the majority of the money Plaintiff claims she is owed was held in accounts which Ms. Arshad was a co-owner of. Plaintiff has never had any interest in these accounts.

**CONCLUSION**

**IT IS ORDERED** that the *Motion for Summary Judgment* **(Rec. Doc. 32)** filed by Defendant, Capital One, N.A. is **GRANTED**.

**IT IS FURTHER ORDERED** that the *Motion for Summary Judgment* **(Rec. Doc. 33)** filed by Plaintiff, Bobette R. Szyller is **DENIED.**

**IT IS FURTHER ORDERED** that the *Motion to Strike Jury* **(Rec. Doc. 35)** filed by Capital One, is **DENIED as moot.**

New Orleans, Louisiana, this 11th day of October, 2018.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE